Mary E. MOONEY, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 30, 1994.

Decided Dec. 29, 1994.

**48**

Lawrence F. Finn, for appellant.

David R. White, Asst. Counsel Appellate Section, and Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Mary E. Mooney (Licensee) appeals from an order of the Court of Common Pleas of Monroe County (trial court) sustaining the suspension of her operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to 75 Pa.C.S. § 1547(b)(1) (refusal to submit to chemical testing).[1] We affirm.

The trial court made the following findings of fact: On June 2, 1993, a Pennsylvania State Trooper arrived at an accident scene in Monroe County, Pennsylvania and discovered that Licensee's vehicle had left the roadway and struck a telephone pole. When the trooper spoke with Licensee, Licensee admitted that she was driving the vehicle. Furthermore, the trooper detected a strong odor of alcohol on Licensee's breath and observed that Licensee's eyes were bloodshot and her

walk was unsteady. Although the trooper requested that Licensee perform field sobriety tests at the scene of the accident, Licensee told the trooper that she was unable to do so because of the uneven terrain at the site. (Trial ct. op. at 1.)

The trooper placed Licensee under arrest for driving under the influence of alcohol and transported her to the Pocono Medical Center for purposes of drawing a blood alcohol sample. When they arrived at the hospital, the trooper advised Licensee of her *Miranda* rights and the Implied Consent Law. He also advised her that the *Miranda* rights do not apply to the chemical testing procedure under the Implied Consent Law. Licensee then signed a statement acknowledging that she received this explanation from the trooper. (*Id.* at 1–2.)

Licensee told the trooper that she was refusing to submit to a blood test because of a fear of needles and that on previous occasions, she had had difficulty supplying a blood sample through a needle. Licensee did offer to take a breath test or supply a urine sample; however, the trooper declined to afford her the opportunity to take an alternate test. A refusal was recorded and DOT subsequently suspended Licensee's operating privilege for one year as a result of that refusal. (*Id.* at 2.)

Licensee appealed to the trial court, which sustained the suspension, determining that: (1) the trooper had "probable cause" to arrest Licensee for driving under the influence of alcohol;[2] (2) the trooper requested Licen-

---

**1.** The "Implied Consent Law," which is found at 75 Pa.C.S. § 1547(a) and (b), provides in relevant part:

    **(a) General Rule.**—Any person who drives, operates or is in *actual physical control of the movement* of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
    (1) while under the influence of alcohol. . . .
    **(b) Suspension for refusal.**—
    (1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled

substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
    (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

**2.** The trial court concluded that the trooper had "probable cause" to arrest Licensee for driving under the influence of alcohol. (Trial ct. op. at 5.) Although the determining standard is "reasonable grounds," proving "reasonable grounds" is less demanding than proving "probable cause" and, therefore, the minor misuse of the terminology is a harmless error. *See Department of*

see to submit to a blood alcohol test and advised her that her operating privilege would be suspended if she refused; (3) the trooper advised Licensee that her *Miranda* rights did not apply to the chemical testing; (4) Licensee made a knowing and conscious refusal to submit to the chemical test;[3] and (5) Licensee's genuine fear of needles does not excuse her refusal to submit to the chemical test. (Trial ct. op. at 5.)

Licensee now appeals to this court[4] and asks us to determine: (1) whether the trooper had reasonable grounds to request that Licensee submit to a blood alcohol test; (2) whether the trial court's conclusion that Licensee knowingly refused to submit to a blood alcohol test was against the weight of the evidence; and (3) whether the trooper's discretion under 75 Pa.C.S. § 1547 to compel a licensee to submit to the particular chemical test chosen by the trooper or risk refusal is absolute and nonreviewable or whether such a decision should be governed by and reviewable pursuant to the reasonableness of the circumstances surrounding the request.

## I.

■ Licensee argues that the trooper lacked reasonable grounds to believe that she was driving a vehicle under the influence of alcohol. The test for determining "reasonable grounds" is whether a reasonable person, in the position of the arresting officer, viewing the facts and circumstances as they appeared to the arresting officer, could have

concluded that the motorist operated a vehicle while under the influence of alcohol. *McCallum v. Commonwealth,* 140 Pa.Commonwealth Ct. 317, 592 A.2d 820 (1991); *see Department of Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa.Commonwealth Ct. 201, 363 A.2d 870 (1976).

The trial court specifically found that Licensee was the driver of the vehicle involved in the accident, that her breath had a strong odor of alcohol, that her eyes were bloodshot, that her walk was unsteady, and that she refused to perform field sobriety tests. (Trial ct. op. at 1.) These circumstances are sufficient to constitute "reasonable grounds."[5] *Books v. Department of Transportation, Bureau of Driver Licensing,* 109 Pa.Commonwealth Ct. 25, 530 A.2d 972 (1987); *Magill v. Commonwealth,* 104 Pa.Commonwealth Ct. 517, 522 A.2d 172 (1987).

## II.

■ Next, Licensee questions whether the trial court's determination that Licensee knowingly refused to submit to a blood test was against the weight of the evidence. However, rather than arguing that Licensee was incapable of making a knowing and conscious refusal, Licensee focuses on the trial court's credibility determination, contending that the trial court erred in believing the trooper's testimony over that of other witnesses. This argument is without merit.

---

*Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa.Commonwealth Ct. 201, 363 A.2d 870 (1976); *Department of Transportation, Bureau of Traffic Safety v. Doyle,* 103 Pa.Commonwealth Ct. 490, 520 A.2d 917 (1987).

3. The trial court's opinion states that Licensee made a knowing and conscious refusal to submit to the "breathalyzer" test; however, the trial court clearly meant "blood alcohol test." (*See* Trial ct. op. at 5.)

4. In *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992), the Supreme Court stated that our scope of appellate review of a trial court's decision in a license suspension case is limited to determining whether the trial court's findings of fact are supported by *competent* evidence of record and whether the trial court committed an error of law or an abuse of discretion

in reaching its decision. *See also Department of Transportation, Bureau of Driver Licensing v. Boros,* 533 Pa. 214, 221, 620 A.2d 1139, 1140 (1993) ("Where the lower court has heard the case *de novo,* the Commonwealth Court's proper scope of review is to determine whether the facts found by the trial court are supported by competent evidence and to correct any conclusions of law erroneously made.").

5. In her brief, Licensee argues that because the trooper's testimony included inconsistencies, the trial court could not hold that the trooper had reasonable grounds to request a chemical test. Thus, Licensee actually attacks the trooper's credibility and not the basis for the trial court's determination of reasonable grounds. We deal with the question of the trial court's role as fact finder and arbiter of credibility in the second issue.

■ Questions of credibility and conflicts in the evidence presented are for the trial court to resolve and are improper questions for appellate review. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, [an appellate court is] precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility.

*Id.* at 248, 555 A.2d at 875.

Here, the trial court, crediting the trooper's testimony to that effect, determined that the trooper read Licensee proper Implied Consent Law warnings and gave her a proper *O'Connell* explanation. Moreover, the record indicates that the warnings and explanations given to Licensee complied with the requirements set forth in *O'Connell* and its progeny.[6] (R.R. at 13a–15a.) Therefore, evidence supports the trial court's determination that Licensee was properly warned of all aspects concerning a refusal to submit to the blood alcohol test. Because Licensee failed to present any evidence to show that she was incapable of making a knowing and conscious refusal, the trial court did not err.

### III.

■ Finally, Licensee asserts that the trial court erred in holding that the trooper had sole, unfettered discretion to choose the type of chemical test to be given to Licensee.

Licensee acknowledges that this court has plainly held that a fear of needles is an insufficient reason for refusing a blood test, *e.g., Department of Transportation, Bureau*

of Driver Licensing v. Montgomery, 113 Pa.Commonwealth Ct. 421, 537 A.2d 111, *appeal denied*, 520 Pa. 608, 553 A.2d 970 (1988), that a licensee cannot choose the type of chemical testing that will be administered, *e.g., McCullough v. Department of Transportation, Bureau of Traffic Safety*, 122 Pa.Commonwealth Ct. 415, 551 A.2d 1170 (1988), and that a police officer has the option to choose the type of chemical testing. *E.g., Doolin v. Department of Transportation*, 113 Pa.Commonwealth Ct. 296, 300, 537 A.2d 80, 82 (1988) ("[A licensee's] right to request chemical testing is limited to the situation where no test has been requested by the arresting officer."). Nevertheless, Licensee asks this court to disregard this authority and create a new standard that would permit judicial review of a police officer's choice of tests under a reasonableness of the circumstances standard.

We decline to do so in light of our well-established standard that "a police officer with reasonable grounds to believe that a licensee was operating a vehicle under the influence has *unfettered discretion* under Section 1547 to request the licensee to submit to a breath, blood or urine test," *McCullough*, 122 Pa.Commonwealth Ct. at 419, 551 A.2d at 1172 (emphasis added), and that such unfettered discretion allows police officers, not licensees, to choose the type of chemical testing to be given to a licensee. *Kostyk v. Department of Transportation*, 131 Pa.Commonwealth Ct. 455, 570 A.2d 644 (1990) (en banc). Therefore, the trial court did not err.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 29th day of December, 1994, the order of the Court of Common

---

**6.** The trooper read to Licensee a standard chemical testing form, DL–26: Chemical Testing Warnings and Report form, which we have previously found adequate to meet the *O'Connell* requirements. *See Leckenby v. Department of Transportation, Bureau of Driver Licensing*, 160 Pa.Commonwealth Ct. 26, 634 A.2d 670, *appeal denied*, 536 Pa. 632, 637 A.2d 292 (1993). In addition to the DL–26 form, the trooper also read to Licensee State Police Form, S.O. 92–89: Required

Warning for Refusal of B.A.C. Test. This form advises a licensee that her driving privilege will be suspended for one year if she refuses chemical testing and that her *Miranda* rights do not apply to chemical testing. Such an advisement is a valid warning for *O'Connell* purposes. *See Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994).

Pleas of Monroe County, dated March 23, 1994, at 2537 Civil 1993, is hereby affirmed.

DELLA PORTA, Senior Judge, dissenting.

I respectfully dissent. I dissent specifically on the conclusion reached in part III, that the officer has the sole and "unfettered discretion" to choose the type of chemical test to be given to a licensee.

The "Implied Consent Law" (75 Pa.C.S. § 1547(a) and (b)), quoted in full in footnote 1 of the majority opinion, is the sole authority for suspension of driving privileges of a licensee arrested for operating a motor vehicle under the influence of alcohol or controlled substance, who refuses to take a chemical test. This law confers no such unfettered discretion, either directly or by implication.

The mandatory penalty imposed by this Law, by definition, rests on the doctrine of "Implied Consent." It provides that the operator of a motor vehicle is "deemed to have given consent to *one or more* chemical tests of breath, blood or urine...." The three available tests are listed in the disjunctive, not the conjunctive. Clearly, the legislature did not say "consent to all possible tests." It could easily have said so if that is what it intended. Because it failed to do so, I conclude that it meant exactly what it said: "consent *to one* or more chemical tests...." It is clear to me that the legislature chose this specific language because it was conscious of its obligation to enact legislation which will most likely pass the test of constitutionality. "Reasonableness" is one of the requirements to pass such a test. Obviously, the legislature saw the possibility that there may be circumstances, such as medical, physiological or psychological conditions, or religious convictions, which would make it impossible for a licensee to give consent to one *particular* test while being perfectly willing to consent to other tests. Under such conditions, the legislature must have considered that it would be unreasonable for the police officer to insist on one particular test and, hence, it used the disjunctive phrase of "one or more tests."

But, aside from the logic of the above, the question remains: What is the law, as interpreted by our courts? I am fully aware of the series of decisions by our Court which have said, mostly by way of dicta, that the police officer has sole and "unfettered discretion" to choose the type of chemical test to be given to a licensee. Of all the decisions on the subject that I have been able to find, the following five cases are not exactly on this issue, and the full discretion given to the police officer in each of them is dictum and, therefore, not precedential: *Sladic v. Department of Transportation, Bureau of Driver Licensing*, 164 Pa.Commonwealth Ct. 619, 643 A.2d 1155 (1994); *Kostyk v. Department of Transportation*, 131 Pa.Commonwealth Ct. 455, 570 A.2d 644 (1990); *Pearson v. Commonwealth*, 122 Pa.Commonwealth Ct. 91, 551 A.2d 394 (1988); *Department of Transportation, Bureau of Driver Licensing v. Curran*, 107 Pa.Commonwealth Ct. 1, 526 A.2d 1265 (1987); *Magill v. Commonwealth*, 104 Pa.Commonwealth Ct. 517, 522 A.2d 172 (1987).

In cases where the factual situation is closer to the instant case, such as: *Borger v. Department of Transportation*, 110 Pa.Commonwealth Ct. 512, 532 A.2d 892 (1987), *Smith v. Department of Transportation*, 97 Pa.Commonwealth Ct. 74, 508 A.2d 1269 (1986), *rev'd*, 517 Pa. 327, 536 A.2d 797 (1988); *McFarren v. Department of Transportation*, 96 Pa.Commonwealth Ct. 262, 507 A.2d 879 (1986), *rev'd*, 514 Pa. 411, 525 A.2d 1185 (1987); and all the cases cited in the majority opinion, are generally based on each other's authority. The earliest case on which many of these cases rest is *Department of Transportation, Bureau of Traffic Safety v. Bartle*, 93 Pa.Commonwealth Ct. 132, 500 A.2d 525 (1985), which makes this broad statement of "unfettered discretion by the police officer," based on absolutely nothing. Not a single authority is cited in *Bartle.*

On the other hand, the gist of the logic of this dissent is fully supported by the decision of the Pennsylvania Supreme Court. In *Department of Transportation v. McFarren*, 514 Pa. 411, 525 A.2d 1185 (1987), our Supreme Court overruled the order of our Court and sustained the Appellant's statutory appeal. Incidentally, *Smith*, which is cited by several of the above-cited cases, is

**52**

based primarily on *Bartle,* and secondarily upon *McFarren* before it was reversed.

Our Supreme Court, painstakingly examines and analyzes the language of the "Implied Consent Law" (75 Pa.C.S. § 1547(a) and (b)). On the specific issue of the policeman's authority, the Supreme Court states that the key clause, "shall be deemed to have given consent to *one or more chemical tests of breath, blood or urine,*" *id.* at 414, 525 A.2d at 1186 (emphasis in original), is "clearly susceptible to more than one interpretation." *Id.* at 415, 525 A.2d at 1187. Therefore, the Court goes on, "faced with statutory interpretation the court must ascertain and effectuate the intention of the legislature." *Id.* After a detailed search to determine that legislative intention, the Supreme Court, after stating that it is clear that the legislature is making a concerted effort to keep drunk drivers off our highways and examining the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, concludes that to interpret Section 1547(a) as the police and the Department of Transportation did, would mean that "the legislature would be delegating unbridled power to the police, resulting in a violation of Art. 1, § 8 of the Constitution of this Commonwealth. For this reason, neither the Appellee's interpretation nor its actions can be accepted." *Id.* at 417, 525 A.2d at 1188.

No matter how tough the legislature wanted to be with drunk drivers, it "did not intend either an unreasonable result or a constitutional violation. 1 Pa.C.S. § 1922." *Id.* "[T]he police officer must offer sufficient evidence to establish the 'reasonableness' of such a request." *Id.* at 418, 525 A.2d at 1188. (Emphasis in original.) The Supreme Court concluded by holding that the reason given to request for a second test "can never be deemed reasonable and is thus violative of Art. 1, § 8 of our Constitution," *id.,* and reversed the Commonwealth Court and sustained Appellant's statutory appeal.

Based on the lack of authority supporting the line of cases in our Court for the proposition that the police officer has the sole and unfettered discretion to choose the type of chemical test to be given to a licensee, and,

more importantly, the Pennsylvania Supreme Court decision holding the opposite, I am compelled to respectfully dissent.