# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharae Gaskin                   :

                                :

           v.               :    No. 1178 C.D. 2018

                                :    Submitted: November 23, 2022

Commonwealth of Pennsylvania,   :

Department of Transportation,      :

Bureau of Driver Licensing,        :

               Appellant      :

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                 **HONORABLE MICHAEL H. WOJCIK,** Judge
                 **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: January 3, 2023**

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department), appeals from the Order of the Court of Common Pleas of Philadelphia County (trial court) that sustained the statutory appeal of Sharae Gaskin (Licensee)[1] from a one-year suspension of her operating privilege pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i),[2]

---

[1] By order dated July 28, 2021, this Court precluded Licensee from filing a brief based on her failure to timely comply with our June 10, 2021 order directing her to file and serve her brief within 14 days.

[2] Section 1547(b)(1)(i) of the Vehicle Code states, in relevant part:

(1) If any person placed under arrest for a violation of [S]ection 3802 [of the Vehicle Code, 75 Pa.C.S. § 3802 (relating to driving under the influence of alcohol or controlled substance),] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

imposed by the Department because Licensee refused to submit to a chemical test in connection with her arrest for driving under the influence of alcohol (DUI). On appeal, the Department argues that the trial court erred by determining that the arresting officer did not have reasonable grounds to believe that Licensee was in actual physical control of the movement of her vehicle while under the influence of alcohol and, thus, had no basis for requesting that Licensee submit to a chemical test. For the following reasons, we reverse.

By notice mailed on April 4, 2018, the Department informed Licensee that it was suspending her operating privilege for one year pursuant to Section 1547(b)(1)(i) of the Vehicle Code for refusing a chemical test on March 9, 2018. (Official Notice of Suspension, Reproduced Record (R.R.) at 6a-9a.) Licensee appealed the suspension, and the trial court held a *de novo* hearing.

At the hearing, the Department presented the testimony of the arresting officer, Simone Molotsky of the Philadelphia Police Department (Officer Molotsky). On March 9, 2018, while on patrol between 8:30 p.m. and 9:00 p.m., Officer Molotsky was "flagged down by a pedestrian stating that there was a female slumped over the wheel in her vehicle." (Hearing Transcript (Hr'g Tr.) at 3-5, R.R. at 12a-14a.) Officer Molotsky located the vehicle and observed Licensee slumped over and unconscious in the driver's seat. She noted that the vehicle's keys were in the ignition, the engine was running, and the headlights were on. After knocking on the window several times, Licensee awoke. Officer Molotsky observed that Licensee had bloodshot eyes and slurred speech and that Licensee smelled strongly of alcohol. Officer Molotsky then looked to the right of Licensee and saw an open bottle of vodka in the passenger seat. Upon exiting the vehicle at Officer Molotsky's request,

---

75 Pa.C.S. § 1547(b)(1)(i).

2

Licensee fell backwards and caught herself on the vehicle's frame. Officer Molotsky asked if Licensee would perform field sobriety tests, and Licensee agreed. Prior to conducting the tests, Officer Molotsky inquired if Licensee had any medical conditions, and Licensee allegedly responded that she had taken Xanax that evening.[3] Officer Molotsky then attempted to explain the tests. Officer Molotsky testified that Licensee was unable to follow the instructions for the first test, which involved following the tip of a pen with her eyes; Licensee initially declined to perform the second test (the "walk and turn") but then attempted it unsuccessfully; and Licensee became "irate" while attempting to stand on one leg for the third test "and refused to follow [Officer Molotsky's] orders." (Hr'g Tr. at 7-10, R.R. at 16a-19a.) Ultimately, Licensee failed to successfully complete any of the tests. As a result, Officer Molotsky placed Licensee under arrest for suspicion of DUI, drove Licensee to the "central processing division" at the police station, and presented Licensee to an Accident Investigation Division officer for a chemical test. (Hr'g Tr. at 10-11, R.R. at 19a-20a.)

The Department next presented the testimony of Officer Ronald Jackson of the Philadelphia Police Department (Officer Jackson), who is assigned to the Accident Investigation Division and is responsible for performing chemical testing on DUI suspects. Officer Jackson testified that he read the DL-26 warnings to Licensee and advised her that the chemical test being requested was a blood draw. According to Officer Jackson, Licensee "really didn't respond" to the warnings and "just cried." (Hr'g Tr. at 17, R.R. at 26a.) Officer Jackson asked Licensee to take the test, and she continued to cry for about 5 to 10 minutes. Because Licensee never

---

[3] We note that the trial court did not make any finding regarding Licensee's apparent admission to taking Xanax that evening.

responded yes or no, Officer Jackson agreed that he "deemed it a refusal" based on the warnings. (Hr'g Tr. at 18, R.R. at 27a.)

Licensee testified on her own behalf. She explained that after work, she brought a bottle of vodka to her friend's house, where they had some drinks. After an hour, she left to go straight home. She stated that there were no available parking spaces on her block, so she parked on the corner down the street from her home. Licensee then explained that she "had to go to the bathroom really bad," so she left "everything," including her pocketbook, on the passenger seat and ran to her house to use the bathroom. (Hr'g Tr. at 22, R.R. at 31a.) Licensee testified that, approximately 30 minutes later, she remembered that she needed to return to her car to get her purse. She first stopped at the store across from her parked car to get a cigar. She explained that she smoked the cigar outside, but because it was cold out, she "got back in the car and started the car to put the heat on to warm up before [she] walked back down the street with all of [her] bags and stuff." (Hr'g Tr. at 22, R.R. at 31a.) Licensee sat in her car listening to music, which is something she does often, and fell asleep without realizing having done so. Sometime thereafter Licensee was startled awake by Officer Molotsky knocking on the vehicle's window.[4]

Licensee recounted that Officer Molotsky asked if Licensee was okay and if Licensee had taken any drugs, to which Licensee responded that she was not on drugs but had been drinking that night. Licensee explained that she had parked her vehicle earlier and had just returned to it to retrieve her items; Licensee maintained

---

[4] During closing arguments, Licensee presented a more specific timeline of her evening, but a portion of her argument is incorrectly identified in the Hearing Transcript as a being a statement from "Mr. Dailey," the Department's counsel. (Hr'g Tr. at 36-37, R.R. at 45a-46a.) Licensee stated that she finished work at 7:00 p.m. and drove directly to her friend's house, where they drank vodka. She left about one hour later and drove straight home, a 10-block distance. She explained that she remained inside of her home for approximately 30 minutes before remembering that she needed to return to her vehicle to retrieve her belongings. (*Id.*)

4

that she was not operating the vehicle. Licensee stated that "[i]t seemed as though [Officer Molotsky] didn't believe [Licensee]." (Hr'g Tr. at 22-23, R.R. at 31a-32a.) Licensee recalled providing her driver's license to Officer Molotsky, which, Licensee claimed, established that she lived nearby. Licensee asked Officer Molotsky if Licensee could "just go home[,]" but Officer Molotsky said no, requested that Licensee get out of the car, and began instructing Licensee on the field sobriety tests. (Hr'g Tr. at 24, R.R. at 33a.)

Licensee explained that, when she arrived at the central processing division for the blood test, Officer Jackson began talking to her, and she kept trying to ask him questions that nobody else would answer. She testified that Officer Jackson told her to wait until he was done explaining everything. She then asked him why she had to be arrested and "started getting hysterical[.]" (Hr'g Tr. at 26, R.R. at 35a.) Officer Jackson asked Licensee if she was refusing the test, and Licensee responded that she was not. Licensee testified that she just wanted to understand what was going on and "couldn't control [herself] with the tears." (Hr'g Tr. at 27, R.R. at 36a.) She explained that Officer Jackson "sat there and looked at [Licensee] for a while" and then told her to "[j]ust go to the nurse." (*Id.*) When she went to the nurse, Licensee stated she thought it was for the blood test, but instead, the nurse just took her vitals, and she was then returned to her cell. (*Id.*)[5]

By Order dated July 19, 2018 (entered on July 20, 2018), the trial court sustained Licensee's appeal and rescinded her suspension. (R.R. at 60a.) The

---

[5] Licensee initially objected to the Department's introduction of Exhibits C-1 (Packet of Certified Documents, including the DL-26 Form) and C-2 (Police Report), and the trial court deferred ruling thereon until after Licensee's testimony. (Hr'g Tr. at 19-20, R.R. at 28a-29a; Exhibits (Exs.) C-1, C-2, R.R. at 49a-59a.) Licensee later explained her objection, noting that she disagreed with "the way that certain things were worded" on the forms. (Hr'g Tr. at 29, R.R. at 38a.) The trial court overruled the objection and admitted the exhibits into evidence. (Hr'g Tr. at 29-30, R.R. at 38a-39a.)

5

Department appealed to this Court, and the trial court issued an opinion in support of its Order, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), on October 2, 2018. (Original Record, Item No. 8.) Therein, the trial court made factual findings reflecting the above testimony. (Trial Court Opinion (Trial Ct. Op.) at 1-4.) The trial court first concluded that there was no dispute that Licensee was asked to submit to a chemical test and that Licensee refused to submit to chemical testing after being warned that her refusal to do so would result in a suspension of her operating privilege, leaving the only issue before the court as whether Officer Molotsky had reasonable grounds to arrest Licensee for DUI. (*Id*. at 5.) Based on the evidence presented, the trial court determined that "[t]here is no evidence in the record upon which Officer Molotsky . . . could have formed a reasonable belief that [Licensee] was in physical control of the movement of her car" while intoxicated. (*Id.* at 7.) Although it accepted Officer Molotsky's testimony that Licensee was discovered slumped over and unconscious in the driver's seat of her vehicle with the keys in the ignition, the headlights on, and the engine running, and that Licensee was unsteady upon exiting the vehicle, smelled strongly of alcohol, and had bloodshot eyes, the trial court nevertheless concluded that the Department did not meet its burden of proof in the absence of any eyewitness testimony, or other objective evidence, that Licensee had actually driven her car while intoxicated. (*Id.* at 1-2, 7-8.) The trial court pointed out that Officer Molotsky did not testify that the pedestrian who reported Licensee had stated anything about Licensee driving, that Officer Molotsky had observed Licensee driving, or that Licensee had admitted to Officer Molotsky that she had been driving that evening. (*Id.* at 7-8.) Rather, the trial court pointed to, and apparently found credible, Licensee's testimony "that she drank after she got off of work[] but had been home

6

for half an hour and had not driven her car, which was already parked" a short distance from her home, and that she merely "returned to her car to retrieve her pocketbook, which . . . she had left inside the car earlier in the evening." (*Id.* at 8.) The trial court distinguished the facts here from those in the cases relied upon by the Department,[6] where the arresting officers did not personally observe the licensees driving, but the licensees had either actually been observed or admitted to driving their vehicles prior to the arrival of police. (*Id.*) Instead, the trial court analogized the facts to two other decisions,[7] where the arresting officers also did not personally observe the licensees driving and there was no other objective evidence that the licensees were in physical control of their vehicles while intoxicated. (*Id.*) Accordingly, the trial court held that the Department failed to meet its burden of showing that Officer Molotsky had reasonable grounds to arrest Licensee on suspicion of DUI because "no objective evidence exist[ed] on the record [upon] which a reasonable belief could be formed that" Licensee was "physically in control of [her] vehicle while intoxicated." (*Id.*) Therefore, the trial court sustained Licensee's appeal and rescinded the one-year suspension.

On appeal,[8] the Department argues that the trial court erred as a matter of law when it determined that Officer Molotsky did not have reasonable grounds to believe

---

[6] *Finnegan v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 2307 C.D. 2012, filed July 11, 2013); *Bashore v. Dep't of Transp., Bureau of Driver Licensing*, 27 A.3d 272 (Pa. Cmwlth. 2011); and *Patterson v. Commonwealth*, 587 A.2d 897 (Pa. Cmwlth. 1991). *Finnegan* is an unreported opinion, which is cited herein for its persuasive value only. *See* Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[7] *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203 (Pa. 1999); *Solomon v. Dep't of Transp., Bureau of Driver Licensing*, 966 A.2d 640 (Pa. Cmwlth. 2009), overruled by *Bold v. Dep't of Transp., Bureau of Driver Licensing*, __ A.3d __ (Pa. Cmwlth., No. 784 C.D. 2020, filed Nov. 21, 2022).

[8] This Court's review in license suspension cases "is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court

7

that Licensee was operating or in actual physical control of the movement of her vehicle while intoxicated. The Department asserts there is no requirement that a police officer or other witness actually observe a licensee operating a vehicle while intoxicated to establish reasonable grounds. The Department further contends that the evidence presented by Officer Molotsky was, in fact, sufficient to prove that she had the necessary reasonable grounds to meet its burden of proof. Specifically, Officer Molotsky found Licensee slumped over the steering wheel of her parked vehicle and unconscious, with the keys in the ignition, the engine running, and the headlights on. Officer Molotsky also observed Licensee's bloodshot eyes, slurred speech, and the odor of alcohol, and that there was an open bottle of vodka in the passenger seat. Further, Licensee was unsteady on her feet when she exited the vehicle, was unable to successfully perform any of the three field sobriety tests, and indicated that she had taken a Xanax that night. The Department argues that, taking these facts together, it was reasonable for Officer Molotsky to believe that Licensee could have operated or been in actual physical control of a vehicle while under the influence of alcohol, and, therefore, it met its burden of proof.

We begin with a review of the relevant law. Section 3802(a)(1) of the Vehicle Code states: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). Section 1547 of the Vehicle Code, commonly referred to as the Implied Consent Law, permits chemical testing of drivers under certain circumstances. 75 Pa.C.S. § 1547. To sustain the suspension of a licensee's operating privilege under Section 1547 of

---

committed an error of law or an abuse of discretion." *Banner*, 737 A.2d at 1205. "Questions of credibility are for the trial court to resolve." *Id.*

8

the Vehicle Code, the Department has the burden of proving at the statutory appeal hearing that the licensee:

> (1) was arrested for [DUI] by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under [the] influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). The test for whether a police officer had reasonable grounds to believe that a licensee had been operating or in actual physical control of the movement of a vehicle while intoxicated is not very demanding, and it is not necessary for the police officer to be correct in his or her belief. *Dep't of Transp., Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1348 (Pa. Cmwlth. 1990). Reasonable grounds are established "when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, **could have concluded** that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner*, 737 A.2d at 1207 (emphasis added). "In determining whether an officer had reasonable grounds to believe that a [licensee] was in 'actual physical control' of a vehicle, [a] court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running[,] and whether there was other evidence indicating that the [licensee] had driven the vehicle at some point prior to the arrival of the police." *Id.* Moreover,

> [w]hile there is no set list of behaviors that a person must exhibit for an officer to have reasonable grounds for making an arrest, case law has provided numerous examples of what this Court has accepted as reasonable grounds in the past, e.g., staggering, swaying, falling down,

9

belligerent or uncooperative behavior, slurred speech, and the odor of alcohol.

*Stancavage v. Dep't of Transp., Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). However, "the absence of one or more of the above-listed *Stancavage* factors does not mean the officer lacks reasonable grounds to believe a [licensee] has driven while intoxicated." *Farnack v. Dep't of Transp., Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011). Further, "[i]t is immaterial whether alternative reasonable explanations for how the motorist came to be as he [or she] was found [to] exist." *Gammer v. Dep't of Transp., Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010) (citing *Bird*, 578 A.2d at 1348). "Whether reasonable grounds exist is a question of law reviewable by [a] court on a case[-]by[-]case basis." *Banner*, 737 A.2d at 1207.

We first consider the Department's assertion that there is no requirement that a police officer or another eyewitness actually observe a licensee operating a vehicle while intoxicated to establish reasonable grounds. In its 1925(a) Opinion, the trial court referenced a series of cases where the arresting officers did not personally observe the licensees driving, but the licensees had either actually been observed driving or admitted to the officer to driving their vehicles prior to the arrival of police, thus establishing reasonable grounds in those cases. In *Finnegan v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 2307 C.D. 2012, filed July 11, 2013), slip op. at 7-8, the Department established reasonable grounds where the licensee was found asleep in driver's seat of parked vehicle, while intoxicated, with dashboard lights and headlights on, a warm engine, and the licensee stated to the arresting officer that he would not be driving "again" that evening. In *Bashore v. Department of Transportation, Bureau of Driver Licensing*, 27 A.3d 272, 275-76 (Pa. Cmwlth. 2011), the Department established the

10

necessary reasonable grounds where the arresting officer was dispatched to a DUI hit-and-run, the arresting officer observed that the licensee appeared extremely intoxicated behind the wheel of her car, and the arresting officer's investigation revealed, through a report of the licensee's husband, that the licensee was driving home from her sister's house when accident occurred. Finally, in *Patterson v. Commonwealth*, 587 A.2d 897, 900-01 (Pa. Cmwlth. 1991), the Department established reasonable grounds where the arresting officer testified that the licensee, who smelled strongly of alcohol, was identified by an eyewitness as the motorist who followed the witness first in his car and then on foot. The trial court distinguished these cases, concluding that this matter was more like *Banner*, 737 A.2d 1206, and *Solomon v. Department of Transportation, Bureau of Driver Licensing*, 966 A.2d 640 (Pa. Cmwlth. 2009), *overruled by Bold v. Department of Transportation, Bureau of Driver Licensing*, __ A.3d __ (Pa. Cmwlth., No. 784 C.D. 2020, filed November 21, 2022) (en banc), in which the arresting officers did not observe the licensees driving and there was no other objective evidence that the licensees were in physical control of their vehicles while intoxicated. Thus, in those cases, the Pennsylvania Supreme Court and this Court, respectively, held that reasonable grounds were not established. The Department contends that each of these cases is distinguishable from the instant matter. We agree.

First, we note that *Finnegan*, *Bashore*, and *Patterson* do not suggest that someone **must** see the licensee driving or that the licensee **must** admit to driving in order to establish reasonable grounds. Those cases merely establish that eyewitness identification of a licensee having driven or a licensee's admission to driving, **coupled with other indicia of intoxication**, can support a police officer's reasonable belief that a licensee was DUI. This Court has expressly held that "[i]t

11

is not necessary for an officer to actually witness a licensee operating a vehicle in order to have reasonable grounds to place [the licensee] under arrest for [DUI]." *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 437 (Pa. Cmwlth. 2014). Further, this Court has concluded that

> [a]s a result of the 1982 amendment to Section 1547[ of the Vehicle Code,] it [is] not necessary that [a licensee] be observed behind the steering wheel of [a] vehicle while it [is] in motion. . . . For the purposes of Section 1547, proving that [a] licensee had control of the movements of either the machinery of the motor vehicle or of the management of the movement of the vehicle itself, either by direct evidence or **evidence supporting an <u>inference</u> that the licensee previously had such control, is sufficient**.

*Dep't of Transp., Bureau of Driver Licensing v. Bendik*, 535 A.2d 1249, 1251 (Pa. Cmwlth. 1988) (emphasis added) (citations omitted). Thus, the Department is not required to establish that either the arresting officer or another person directly observed a licensee operating a vehicle or that the licensee admitted to doing so for it to meet its burden of proving reasonable grounds.

Second, a comparison of the facts in *Banner* and *Solomon* to those here reveals significant differences. In *Banner*, the police discovered the licensee sleeping in the reclined passenger seat of a vehicle on the side of the road with the keys in the ignition but the engine, ignition, and lights off. *Banner*, 737 A.2d at 1204. The trial court found that the arresting officer had reasonable grounds to believe that the licensee "had been in control of his vehicle while under the influence of alcohol[,]" and this Court affirmed. *Id.* at 1205. On appeal, the Supreme Court reversed. In doing so, and based on its review of relevant case law,[9] the Supreme Court stated

---

[9] *Vinansky v. Dep't of Trans., Bureau of Driver Licensing*, 665 A.2d 860 (Pa. Cmwlth. 1995) (reasonable grounds established where the licensee was discovered slumped over the steering wheel of a truck that was parked in parking lot behind fire hall with engine running and

12

that the court must find "some objective evidence that the [licensee] exercised control over the movement of the vehicle at the time [the licensee] was intoxicated" in order for the officer's belief to be found reasonable. *Id.* at 1207. The Supreme Court distinguished *Banner* from those other cases because the licensee in *Banner* was found asleep in the reclined passenger seat with the lights, ignition, and engine off and the only evidence tending to establish the licensee's control of the vehicle's movement was the location of the car parked alongside the road near a convenience store. Reasoning that "[a] line must be drawn to distinguish circumstances where a [licensee] is driving [a] vehicle while under the influence of alcohol, which the statute is intended to prevent, and circumstances where a [licensee] is physically present in a motor vehicle after becoming intoxicated," the Supreme Court concluded that the circumstances were "simply too tenuous" in *Banner* to demonstrate that the licensee was in actual physical control of the vehicle's movement. *Id.* at 1208. We emphasize that the licensee in *Banner* was found sleeping, reclined in the **passenger seat** of his vehicle parked on the side of the road **with the engine, ignition, and lights off**. *Banner*, 737 A.2d at 1204. A vehicle can neither be driven from the passenger seat or while the engine is off, and, as such, reasonable grounds were not established in that case. In contrast, Licensee was

---

brake lights on); *Dep't of Transp., Bureau of Driver Licensing v. Paige*, 628 A.2d 917 (Pa. Cmwlth. 1993) (reasonable grounds established where the licensee's vehicle was parked on city street with its parking lights on, and the licensee was asleep and slumped over the steering wheel with the key in the ignition); *Polinsky v. Dep't of Transp.*, 569 A.2d 425 (Pa. Cmwlth. 1990) (reasonable grounds established where the licensee was found asleep behind the wheel of her car that was parked beside a fast food restaurant's pick-up window, the headlights were on, the vehicle was in gear with the ignition switch turned on, although the engine was not running, and two empty alcoholic beverage bottles were found in vehicle); and *Dep't of Transp., Bureau of Traffic Safety v. Farner*, 494 A.2d 513 (Pa. Cmwlth. 1985) (reasonable grounds established where the licensee was found behind wheel of truck, which was parked in traffic lane with his hands on the steering wheel, engine running, brake lights activated, but the truck's transmission was left in "park").

13

found **slumped over the wheel** and unconscious in the **driver's seat** of her vehicle, with **the keys in the ignition, the engine running, and the headlights on**.

In *Solomon*, the licensee was found at nearly 3:00 a.m. asleep **reclined** in the driver's seat of his running vehicle, which was parked in a driving lane across the street from a gentlemen's club. 966 A.2d at 642. In affirming the trial court's determination that the officer did not have reasonable grounds in that case, this Court found significant that it was undisputedly a cold and snowy night and that the officer testified that it was common for patrons of the gentlemen's club to park where the licensee's vehicle was parked. *Id.* Viewing the circumstances in their totality, we stated that "[t]here was no objective evidence presented to indicate [the licensee] had driven the vehicle at any point prior to the arrival of the police." *Id.* Here, unlike in *Solomon*, there is objective evidence in the form of Officer Molotsky's testimony that she found Licensee asleep, slumped over the steering wheel in the un-reclined driver's seat of her parked vehicle with the engine running and lights on. The vehicle was parked along a street, and there is nothing in the record that indicates, as was the case in *Solomon*, that the parking area was regularly used by patrons of an establishment that served alcohol such that Licensee could have been considered to be "sleeping it off." Thus, based on the above circumstances, we agree with the Department that the cases relied upon by the trial court are distinguishable from the instant matter and do not support the trial court's conclusion that there was no objective evidence from which Officer Molotsky could have had reasonable grounds to believe that Licensee had driven while intoxicated. Further, even if *Solomon* were not distinguishable, it was overruled by this Court in *Bold*. *Bold*, __ A.3d at __ , slip op. 11-12.

14

The Department argues that this Court's decisions in *Vinansky v. Department of Transportation, Bureau of Driver Licensing*, 665 A.2d 860 (Pa. Cmwlth. 1995), and *Gammer*, 995 A.2d at 382, support the conclusion that reasonable grounds were established in this case. In *Vinansky*, the licensee's vehicle was parked in a parking lot behind a volunteer fire company near the entrance to its private social club. The licensee was seated in the driver's seat of the vehicle with his head slumped over the steering wheel. The vehicle was running, and the brake lights were on. The police officer opened the door of the vehicle, turned off the ignition, and extracted the licensee from the vehicle. The licensee smelled of alcohol and was unable to speak or stand without assistance. The licensee was transported to the police station, where he refused a breathalyzer test. Ultimately, the Department notified the licensee that his driver's license would be suspended for one year for refusing to submit to chemical testing. The licensee appealed to the trial court, arguing, *inter alia*, that the police officer lacked reasonable grounds to believe that the licensee was operating or in actual physical control of the vehicle while intoxicated. The trial court agreed, and the Department appealed to this Court. We reversed, stating that "[o]ne reasonable interpretation of the [] facts" was that the licensee "drank to excess elsewhere and was attempting to go to the club to continue his drinking, but couldn't make it because he was completely ossified by the alcohol he had already consumed." *Id.* at 863 (emphasis omitted). This interpretation was supported by the fact that the vehicle was running, the licensee's foot was on the brake pedal, and he was passed out slumped over the steering wheel. Thus, we held that the officer's testimony was sufficient to establish reasonable grounds.

15

In *Gammer*, state troopers discovered the licensee "seated in the driver's seat but slouched over the passenger seat, appearing to be either unconscious or asleep" with the car engine running while parked in a legal parking space. *Gammer*, 995 A.2d at 382. The trial court found that the state troopers had reasonable grounds to believe that the licensee was in actual physical control of his vehicle based on the licensee's location in the vehicle and the running engine. *Id.* at 383. On appeal, we affirmed. We held that "the reasonable grounds test is satisfied when a police officer discovers . . . a [licensee] slumped over in the driver's seat of the vehicle with the engine running while the vehicle is parked in a legal parking space in a parking lot," particularly given the particular location of the vehicle and the fact that one of the state troopers was aware of the driver's past DUIs. *Id.* at 384. Citing *Vinansky* and other similar cases, we explained that, "[g]enerally, [a licensee's] presence in the driver's seat of the vehicle with the engine on has been deemed sufficient to satisfy the reasonable grounds test." *Id.* We distinguished *Solomon* based on the fact that, there, the trial court had found that the area where the vehicle was parked was commonly used by the gentleman's club's patrons, that the engine was running because it was cold and snowy, and that it was 3:00 a.m., all of which supported the conclusion that the licensee was merely "sleeping it off." *Id.* at 384 n.4.

We agree with the Department that *Vinansky* and *Gammer* support the legal conclusion that Officer Molotsky had the required reasonable grounds to arrest Licensee under these circumstances. *Gammer* establishes that being found intoxicated in the driver's seat of a running vehicle is enough to establish reasonable grounds. This Court recently upheld this principle in *Bold*, __ A.3d at __, slip op. at 12-13 (police officer found the licensee sleeping behind steering wheel of running

vehicle, the vehicle's headlights were on, and the vehicle was legally parked in a parking spot near liquor store and restaurant/bar), and *Hambright v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., Nos. 782, 783 C.D. 2020, filed September 30, 2021), slip op. at 6-7[10] (police officer found the licensee asleep, slumped over the steering wheel of a running vehicle that was parked behind a bar). In both *Bold* and *Hambright*, this Court held that, based on *Gammer*, reasonable grounds are established when a licensee is passed out in the driver's seat of the vehicle with the engine running. *Bold*, __ A.3d at __, slip op. at 12-13; *Hambright*, slip op. at 6-7. In *Bold* and *Hambright*, this Court distinguished *Solomon* based on its facts. *Bold*, __ A.3d at __, slip op. at 12-13; *Hambright*, slip op. at 7. *Bold* went one step further, expressly overruling *Solomon* to the extent it would compel a different result. *Bold*, __ A.3d at __, slip op. at 11-12. Further, *Vinansky*, also cited in *Bold*, instructs that if the officer's interpretation of the totality of the circumstances is a reasonable one, the Department's burden is met. *Vinansky*, 665 A.2d at 863.

The only question in this case is whether, as a matter of law, Officer Molotsky had reasonable grounds to believe that Licensee was operating or in actual physical control of the movement of her vehicle while intoxicated. In sustaining Licensee's appeal, the trial court focused on the fact that no one witnessed Licensee driving her vehicle to conclude that Officer Molotsky lacked reasonable grounds to request that Licensee submit to chemical testing. It is well settled, however, that there is no such requirement. *See, e.g.*, *Walkden*, 103 A.3d at 437; *Bendik*, 535 A.2d at 1251. Instead, it is the totality of the circumstances that must be examined, which the trial court did not do here. In focusing only on whether someone saw Licensee driving,

_____

[10] *Hambright* is cited for its persuasive value. *See* Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

the trial court disregarded Officer Molotsky's testimony, which was not rejected as not credible, that (1) Licensee was discovered slumped over and unconscious in the driver's seat of her parked vehicle; (2) the vehicle's keys were in the ignition, the engine was running, and the headlights were on; (3) Licensee had bloodshot eyes and slurred speech; (4) a strong odor of alcohol emanated from Licensee; (5) there was an open bottle of vodka in the passenger seat of the vehicle;[11] (6) Licensee fell backwards upon exiting the vehicle and had to catch herself on the vehicle's frame;[12] and (7) Licensee was unable to follow Officer Molotsky's instructions for the field sobriety tests and, ultimately, failed to successfully complete the tests. (Trial Ct. Op. at 1-3, 7-8.)

Reviewing these circumstances in their totality, we agree with the Department that it constitutes **some** objective evidence a reasonable interpretation of which by a person in Officer Molotsky's position would be that Licensee could have operated and/or exercised actual physical control over the movement of her vehicle while intoxicated, prior to the arrest. *Banner*, 737 A.2d at 1207; *Vinansky*, 665 A.2d at 863. This is not a case, as in *Banner*, where the known facts were "simply too tenuous" to demonstrate that the licensee had been in actual physical control of the vehicle's movement while intoxicated. 737 A.2d at 1208. Rather, these facts provided Officer Molotsky with the reasonable grounds necessary for the Department to meet its burden of proof, and the trial court erred in concluding otherwise.

---

[11] Empty and/or open bottles of alcohol within a vehicle may be considered by an officer. *Polinsky*, 569 A.2d at 427.

[12] A licensee's unsteadiness on her feet may be considered by an officer. *See Mooney v. Dep't of Transp., Bureau of Driver Licensing*, 654 A.2d 47, 49 (Pa. Cmwlth. 1994).

For the foregoing reasons, the trial court's Order is reversed.

_____
**RENÉE COHN JUBELIRER,** President Judge


Senior Judge Leavitt concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharae Gaskin                :
                                    :
           v.                :    No. 1178 C.D. 2018
                                    :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,       :
                Appellant     :

## O R D E R

NOW, January 3, 2023, the Order of the Court of Common Pleas of Philadelphia County, dated July 19, 2018, is **REVERSED**, and the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's one-year suspension of Sharae Gaskin's operating privilege is hereby **REINSTATED**.

_____
**RENÉE COHN JUBELIRER,** President Judge